UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DAVID ALAN TAYLOR,

        Plaintiff,

v.

JEFFREY WOODS et al.,

        Defendants.

_____/

Case No. 2:17-cv-00085

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner in state court asserting violations of 42 U.S.C. §§ 1983 and 1985, as well as under state law. The case was removed to this Court on May 9, 2017. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woods and Isard. The Court will also dismiss Plaintiff's due process claims against Defendants Ross and Lumsden, but will not dismiss Plaintiff's retaliation claims against Defendants Ross and Lumsden.

**Discussion**

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Warden Jeffrey Woods, Deputy Warden David Isard, and Corrections Officers Unknown Ross and Unknown Lumsden.

Plaintiff alleges that in May of 2016, while Plaintiff was confined at URF, the Lime Unit staff began a methodical ticket writing campaign against him. Initially, the campaign was not focused solely on Plaintiff, but on a number of prisoners in an effort to harass them and retaliate against them. When the ticket writing became more focused on Plaintiff, he began writing letters of complaint to both Defendant Woods and Defendant Isard. Plaintiff did not receive any response to his letters. Plaintiff attempted to send a request for an investigation to the Civil Service Commission, but does not believe that the complaint was ever mailed because he never received a receipt. Plaintiff filed a step I grievance on Defendants Woods and Isard for failure to initiate "checks and balances." Plaintiff further claims that when the misconduct ticket campaign amplified against him, he wrote to Defendant Woods and Acting Deputy Warden LaLonde, as well as to Internal Affairs and the Civil Service Commission.

Defendant Ross wrote the first retaliatory misconduct on Plaintiff on May 19, 2016, claiming that Plaintiff was "covered up" at 4:50 a.m. When Plaintiff asked him why he had written the ticket, Defendant Ross told him that he would write as many tickets as he wanted and that Plaintiff should keep filing lawsuits. Immediately thereafter, Defendant Ross wrote a ticket on

2

Plaintiff for "Interfering with the Administration of Rules," which falsely stated that Plaintiff had asked why Defendant Ross was always writing tickets on him. Plaintiff was found not guilty of the ticket.

Plaintiff filed grievances against Defendant Ross and another staff officer, asserting deliberate abuse of the misconduct process. Plaintiff states that his grievance against Defendant Ross was initially returned to him for a more definite statement, which Plaintiff supplied. When Plaintiff was interviewed on the grievance, he stated that he would sign off on the grievance if Defendant Ross agreed to stop harassing him and writing false misconducts on him. Shortly thereafter, Plaintiff's cellmate overheard Defendant Ross say that he was going to "get [Plaintiff's] ass," and that Plaintiff "thinks he can file all that shit and get away with it."

On September 18, 2016, Defendant Ross wrote a false sexual misconduct ticket on Plaintiff without any supporting evidence. Plaintiff sought to appeal the misconduct conviction, but was not provided with the appeal packet. On September 19, 2016, Plaintiff filed a step I grievance against Defendant Ross, which was rejected as nongrievable. Defendant Ross wrote another false misconduct on Plaintiff for being out of place in the hallway outside the bathroom during count. Plaintiff claims that the security camera would have shown the falsity of this ticket and filed a grievance regarding this issue. The grievance was rejected as nongrievable. On December 12, 2016, Plaintiff refused to go to the "West-Side" because it was an open dorm setting and would be bad for Plaintiff due to his old age. Consequently, Plaintiff received a misconduct for disobeying a direct order. Plaintiff was warned that if he received any more misconducts, he could be classified to administrative segregation.

Plaintiff alleges that on December 14, 2016, Defendant Lumsden searched his cell and claimed to have found a Bic razor under Plaintiff's locker. Defendant Lumsden wrote a misconduct ticket on Plaintiff for possession of dangerous contraband. While Plaintiff was being reviewed on the ticket, prisoner James Coleman overheard Defendant Lumsden tell Plaintiff, "How do you like us now? Go ahead and write more letters and grievances to the Warden against Ross." Hearing Officer O'Brien found Plaintiff guilty of the misconduct. Plaintiff's request for rehearing was denied. Plaintiff filed a grievance against Defendant Lumsden, which was rejected as nongrievable.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments, as well as under state law. Plaintiff seeks damages, as well as declaratory and injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants Woods and Isard failed to conduct an investigation in response to his grievances or to properly supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Woods and Isard engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff claims that Defendants Ross and Lumsden violated his Fourteenth Amendment due process rights by writing false misconduct tickets on him. Plaintiff received Class I, II, and III misconduct tickets during the pertinent time period, and was found not guilty of at least one of the misconduct charges. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, contrary to the assertion in his complaint,

6

Plaintiff should not have been denied good time or disciplinary credits as a result of his Class II and III misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II and III misconduct convictions.

Plaintiff claims that the Class I major misconduct charges against him were "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has

7

> real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

Even in the absence of a protectable liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's due process claims against Defendants Ross and Lumsden are properly dismissed.

Finally, the Court notes that Plaintiff's retaliation claims against Defendants Ross and Lumsden are not clearly frivolous and are not properly dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Woods and Isard will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's due process claims against Defendants Ross and Lumsden, but will not dismiss Plaintiff's retaliation claims against Defendants Ross and Lumsden.

An Order consistent with this Opinion will be entered.

Dated: November 14, 2017         /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge